UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: ROUNDUP PRODUCTS LIABILITY LITGATION<br><br>This document relates to:<br>*Hardeman v. Monsanto*, 3:16-cv-00525-VC | MDL No. 2741<br>Case No. 16-md-02741-VC<br><br>**PRETRIAL ORDER NO. 91: ORDER SANCTIONING MR. HARDEMAN'S COUNSEL**<br><br>Dkt. No. 2802 |

Mr. Hardeman's counsel, Aimee Wagstaff, committed several acts of misconduct during her opening statement.

First, she spoke to the jury about what Phase 2 of the trial would involve, despite a clear understanding among the parties that this would be off limits, as reflected in the numerous in-court discussions on the issue, as well as the jury instruction the Court hashed out with the parties and gave to the jury before opening statements.

Second, she spent a significant amount of time at the beginning of her opening detailing Mr. Hardeman's personal history and the circumstances surrounding when he learned he had cancer, even though this information is clearly not relevant to Phase 1. She continued this discussion even after the Court instructed her to move on to matters relevant to Phase 1. This forced the Court to call a sidebar to warn Wagstaff again.

Third, the Court ruled pretrial that the 1985 Gingerich memo and other similar internal documents "are likely to waste time and distract the jury under Rule 403," but stated that the Court might later "reevaluate whether they may be introduced." *See* Dkt. No. 2775. Despite this,

Wagstaff quoted the Gingerich memo and other similar internal Monsanto documents to the jury, and included excerpts from those documents on her slides.

Fourth, the Court issued a pretrial ruling strictly limiting the evidence that would be admissible about IARC during Phase 1, but Wagstaff violated this by attempting to go into detail about IARC's analysis and the process by which it reached its conclusion.

Fifth, Wagstaff violated the Court's bifurcation order and its pretrial evidentiary ruling limiting evidence about the EPA's analysis of glyphosate by attempting to tell the jury that the EPA is vulnerable to political shifts and has had internal disagreement on this issue.

Finally, Wagstaff violated this Court's ruling on specific causation testimony by making statements about the quantitative conclusions relating to dose response that one can draw from the Eriksson and McDuffie studies.

Taken together, the first five violations were intentional and committed in bad faith. These were not slips of the tongue – they were included in the slides Wagstaff and her team prepared and used for her opening statement, and they were on issues that Wagstaff and her team have made clear throughout the pretrial proceedings they believe are important for the jury to hear at the same time it hears the evidence on causation. Nor were the violations borderline – they were obvious violations of both the letter and spirit of the Court's pretrial rulings. This is particularly true with respect to the third, fourth, and fifth violations, and these violations were on important substantive matters. It is at least possible that the sixth violation did not reflect bad faith, and the Court will assume so, even though this assumption is questionable given the numerous other violations. Pursuant to the Court's inherent authority to control attorney conduct in the courtroom and ensure a fair trial, Wagstaff is sanctioned $500 for her bad faith conduct during her opening statement. She is ordered to submit a check payable to the Clerk of the Court

within seven day of this order.

In addition, because the violations were premeditated, it appears that the other members of the trial team should be sanctioned as well. However, to avoid further distracting plaintiffs' counsel from trial preparations, the Court will postpone further consideration of this issue until after the trial has concluded (although additional misconduct during trial will likely result in further proceedings during trial). Within 14 days of the end of trial, Wagstaff is ordered to file a declaration identifying every attorney who participated, even in a minimal way, in the preparation of her opening statement. All such attorneys must be identified, even if they have not appeared at trial. And each of those attorneys is ordered to show cause why they too should not be sanctioned under the Court's inherent authority for this misconduct. Written responses from these attorneys are due within 21 days of the end of trial.

**IT IS SO ORDERED.**

Date: February 26, 2019

_____

Honorable Vince Chhabria
United States District Court