

2001 M STREET NW
10th Floor
WASHINGTON, DC 20036

WWW.WILKINSONWALSH.COM
—
A LIMITED LIABILITY PARTNERSHIP

WASHINGTON, D.C.  |  LOS ANGELES

March 3, 2019

**VIA ECF**

Hon. Vince Chhabria
San Francisco Courthouse, Courtroom 4
450 Golden Gate Avenue
San Francisco, CA 94102

Re:     *In re Roundup Prods. Liab. Litig.*, No. 3:16-md-02741-VC

Dear Judge Chhabria:

Monsanto respectfully submits this letter in response to Plaintiffs' argument that two questions from Dr. Portier's cross-examination, played for the jury on March 1, 2019, opened the door to evidence of Dr. Parry's 1999 analysis of a subset of available studies on glyphosate. Monsanto's position is that there is no basis for allowing Plaintiff to introduce such evidence to "respond" to a passing snippet of testimony from Dr. Portier about EFSA's 2016 response to his letter criticizing the agency's approval of glyphosate.  Even if the Court disagrees, there are far more suitable remedies for any alleged door opening than playing almost 30 minutes of deposition testimony from company witness Dr. Mark Martens, as Plaintiff has proposed.

The examinations of Dr. Portier collectively lasted almost five hours and were played to the jury over two court days.  Monsanto's cross-examination of Dr. Porter composed almost two hours of that time.  Plaintiff's argument for introducing evidence of Dr. Parry's analysis is based on just two questions and answers designated by Monsanto:

Q.  Do you see under their conclusion EFSA writes to you, 'considering a weight of evidence approach, taking into account the quality and reliability of all available data, it is concluded that glyphosate is unlikely to be genotoxic in vivo'?  Did I read that correctly?
A.  You read that correctly.
Q.  And this is them writing back to you; is that correct?
A.  That is correct.

Portier Phase 1 Day 2 Designations at 457:20-458:6.  These questions referred to a quote from EFSA's 2016 response to Dr. Portier's letter criticizing its approval of glyphosate.

During the extensive meet and confer process, the parties endeavored to be faithful to the Court's rulings, and Monsanto designated testimony which it believed to be consistent with those rulings.  *See* PTO 81 at 5-6 ("The plaintiffs' motion in limine 4 to exclude decisions by foreign regulators is granted for Phase 1, subject to the limited exception that Monsanto may briefly cross-

examine Dr. Portier on his efforts to convince European regulators to ban Roundup (in a way that reveals that his efforts have thus far been unsuccessful). This limited exception is appropriate to allow Monsanto to probe Dr. Portier's objectivity, and to allow Monsanto to counter any erroneous assumption by jurors that glyphosate is banned in Europe."). To be sure, Plaintiff objected to many of Monsanto's designations about regulators' responses to Dr. Portier (though not the questions and answers Plaintiff now highlights), and the Court sustained some of those objections but overruled others. *See, e.g.*, PTO 96 (sustaining Plaintiff's objections to discussions of Dr. Portier's interactions with EPA on the immediately preceding page).

Nothing about that limited testimony opens the door to an extensive discussion—by a corporate witness rather than a designated expert witness—of Dr. Parry's evaluation of a subset of the toxicology evidence over 15 years earlier, in 1999. When a party argues that a line of questioning opens the door to particular testimony or evidence, the expectation is that the testimony or evidence in some way responds or relates to the line of questioning. Not so here. EFSA's communication to Dr. Portier does not mention and has nothing to do with Dr. Parry. And to the extent EFSA addressed the evidence of genotoxicity, it did so based on an additional 15 years of science beyond the limited subset of materials Dr. Parry reviewed. For those reasons, evidence regarding Dr. Parry is also inadmissible under Rules 401 and 403—among other reasons, it is at best extremely speculative to suggest that anything about Dr. Parry's analysis would have changed EFSA's conclusions. Nor is there any real need for Plaintiffs to "rebut" EFSA's conclusion about genotoxicity, given Dr. Ritz's testimony about IARC, *see* Trial Tr. at 488:18-491:1, as well as the slide briefly shown during Plaintiffs' opening about IARC's conclusions regarding genotoxicity, *see* Dkt. 2865 at 80, let alone the slide briefly displayed regarding the EPA, including its alleged motivations and conclusions, *id.* at 84.

In the event the Court disagrees, however, the appropriate remedy for the admission of two questions from a deposition is not extensive deposition testimony from another witness. Rather, the best course is to issue a curative instruction that the jury should disregard the challenged aspect of Dr. Portier's testimony. For example, the Court could instruct the jury that while it may consider EFSA's disagreement with the opinions Dr. Portier expressed in his letter, it may not consider EFSA's comments on the issue of genotoxicity. That approach would cure any potential prejudice to Plaintiff without devolving into a lengthy sideshow about decades-old company conduct.

In the alternative, the Court should permit Plaintiff to play the portions of Plaintiff's Phase 2 direct of Dr. Portier that address the Parry issue. *See* Exhibit A (Portier Phase 2 Designations at 772:19-776:25). While this testimony is technically part of the Phase 2 examination, there is no bar to playing it in Phase 1 to address any issues that may have been created by the designations of Dr. Portier's Phase 1 cross-examination.[1] As the Court has already recognized, the proper remedy for an expert cross-examination that opens the door to Dr. Parry's analysis would be further examination of the same expert on that topic. *See* PTO 81 at 7 ("However, if Monsanto presents expert testimony on the genotoxicity of glyphosate, or otherwise opens the door through cross-examination on, for example, the EPA's conclusions about the genotoxicity of glyphosate, then this evaluation could become admissible **on redirect**." (emphasis added)). To the extent more testimony is permitted, this proposal—unlike Plaintiffs'—is expressly contemplated by this Court's prior rulings.

---

[1] Indeed, over Monsanto's objection, Plaintiffs have made clear that they view Dr. Portier's Phase 2 testimony as potential rebuttal testimony.

Finally, Plaintiff's proposal would leave the jury with two misimpressions: that the science regarding genotoxicity ended in 1999, when Dr. Parry issued his second report, and that EFSA's 2016 letter (which, it bears repeating, does not mention Dr. Parry) represents the lone contrary view.  Accordingly, if the Court permits Plaintiff to play Dr. Martens' testimony, it should also allow Monsanto to make clear that EFSA is not alone in its view.  Specifically, if Plaintiff presents testimony about Dr. Parry's report in an effort to discredit EFSA's conclusion on genotoxicity, Monsanto should be allowed to designate testimony from Dr. Portier that (1) the U.S. EPA holds the same view as EFSA, *see* Exhibit B (Portier Phase 1 Designations at 454:2-17), Exhibit C (Portier Phase 2 Designations at 851:6-852:16); (2) a SAP convened by EPA agreed with that view, *see* Exhibit D (Portier Phase 2 Designations at 840:19-24); (3) the World Health Organization and Food and Agriculture Organization of the United Nations Joint Meeting on Pesticide Residues ("JMPR") came to the same conclusion, *see* Exhibit E (Portier Phase 2 Designations at 845:1-10); and (4) Health Canada takes the same position, *see* Exhibit F (Portier Phase 2 Designations at 879:1-10).  To be clear, Monsanto believes that none of this testimony needs to be introduced in Phase 1, because the EFSA statement on genotoxicity does not open the door to the Parry story and even if the Court finds that it does, there are much narrower means of addressing the door opening.  But in the event the Court allows testimony from Dr. Martens on the Parry story, Monsanto should be allowed to complete the record with these additional designations.

Respectfully submitted,

/s/ Brian L. Stekloff_____

Brian L. Stekloff (*pro hac vice*)
(bstekloff@wilkinsonwalsh.com)
Tamarra Matthews Johnson (*pro hac vice*)
(tmatthewsjohnson@wilkinsonwalsh.com)
Rakesh Kilaru (*pro hac vice*)
(rkilaru@wilkinsonwalsh.com)
WILKINSON WALSH + ESKOVITZ LLP
2001 M St. NW, 10th Floor
Washington, DC 20036
Tel: 202-847-4030
Fax: 202-847-4005

Cc: Counsel of Record (via ECF)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of March 2019, a copy of the foregoing was filed with the Clerk of the Court through the CM/ECF system which sent notice of the filing to all appearing parties of record.

/s/ Brian L. Stekloff_____